THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADELE B., o.b.o. J.M.B.[1]
    Plaintiff,

        v.                                                                          Civil No. 3:21-cv-673 (MHL)

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action brought by Adele B. ("Plaintiff"), on behalf of her son, J.M.B. Plaintiff seeks review of the decision of the Commissioner ("Commissioner") of the Social Security Administration ("SSA") finding J.M.B.'s disability had ended December 3, 2015, under the Social Security Act (the "Act"). This matter comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2] Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

Judgment (ECF No. 13) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

On April 18, 2007, Plaintiff, on behalf of J.M.B., filed an application for childhood supplemental security income due to a communication disorder. (R. at 254.) The Commissioner found J.M.B. disabled at that time. (R. at 156.) Subsequently, on November 24, 2015, the Commissioner determined that J.M.B.'s condition had improved to the point where he was no longer disabled. (R. at 153.) The Commissioner upheld its determination upon reconsideration (R. at 156) and Plaintiff requested review of the case by an Administrative Law Judge ("ALJ"). (R. at 188-89.) On February 12, 2021, the ALJ held an administrative hearing during which Plaintiff and J.M.B. appeared with counsel and testified. (R. at 40-76.) On March 12, 2021, the ALJ issued a written decision finding that J.M.B.'s disability ended on December 3, 2015, and that he did not become disabled again after that date. (R. at 15-32.) The Appeals Council upheld the ALJ's decision, rendering it the final decision of the Commissioner. (R. at 1-3.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's disability determination "when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir.

1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

A child is considered disabled for purposes of supplemental security income if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To facilitate a uniform and efficient processing of disability claims, the SSA has promulgated regulations under the Act that reduce the statutory definition of disability to a series of sequential questions. *See e.g., Heckler v. Campbell*, 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983) (discussing considerations in adult disability matters and noting "need for efficiency" in considering disability claims). The regulations set forth a three-step sequential analysis for determining whether a child is disabled for purposes of supplemental security income benefits:

(1) Is the child engaged in any substantial gainful activity?[3] If so, benefits are denied.

---

[3] In determining whether a child has engaged in substantial gainful activity the Commissioner uses the same rules as used for adults. See 20 C.F.R. § 416.924(b). Substantial gainful activity is work activity that is both substantial and gainful and involves doing significant physical or mental activities for pay or profit, regardless of whether a profit is realized. *Id.* § 416.972.

(2) Does the child have a medically severe impairment or combination of impairments?[4] If not, benefits are denied.

(3) Does the child's impairment(s) meet,[5] medically equal, or functionally equal an impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, benefits are granted.

20 C.F.R. § 416.924(a)-(d).

To assess functional equivalence, the Commissioner assesses the interactive and cumulative effects of all of the child's impairments for which there is record evidence, including any non-severe impairments. 20 C.F.R. § 416.926a(a). First, the Commissioner considers everything the child does at home, at school, and in the community and determines what the child cannot do, has difficulty doing, needs help doing, or is restricted from doing because of his impairment(s). 20 C.F.R. § 416.926a(b). When the Commissioner assesses the child's functional limitations, she considers all the relevant factors contained in 20 C.F.R. §§ 416.924a, 416.924b,

---

[4] For a child, a medically determinable impairment or combination of impairments is not severe if it is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations. 20 C.F.R. § 416.924(c).

[5] In determining whether a child's impairment meets one of the listed impairments, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement, . . . then [the child] 'is conclusively presumed to be disabled and entitled to benefits.'" *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (internal quotation and citation omitted). "For a [child] to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). It is not enough to have the diagnosis of a listed impairment; the child "must have a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 & n.5 (1987) (noting it is the claimant's burden to show a medically determinable impairments and to furnish medical evidence regarding the condition).

4

and 416.929, including: (1) how well the child can initiate and sustain activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) the effects of the child's medications or other treatment. 20 C.F.R. § 416.926a.

Next, the Commissioner considers how the child functions in activities in terms of six domains, which are broad areas of functioning intended to capture what a child can or cannot do. § 416.926a(b)(1). These domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id.*

Limitations are assessed by comparing the child's functioning to the functioning of children of the same age who do not have impairments. *Id.* §§ 416.924a(b)(3), 416.926a(b)(1). To establish functional equivalence, the child must have a medically determinable impairment or combination of impairments that results either in "marked" limitations in two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(a), (d).

A child has a "marked" limitation in a domain when his impairment or combination of impairments seriously interferes with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). A "marked" limitation is a limitation that is "more than moderate" but "less than extreme" and may limit only one or several activities or functions. *Id.* A child has an "extreme" limitation in a domain when his impairment or combination of impairments very seriously interferes with his ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i). An "extreme" limitation is a limitation that is "more than marked," and "extreme" is the rating given to the worst limitations, although it does not necessarily mean the child experiences a total lack or loss of ability to function. *Id.*

After the Commissioner awards supplemental security income benefits to an individual under the age of eighteen based upon "an impairment (or combination of impairments) which is likely to improve," the Commissioner must periodically conduct an evaluation to determine if the individual remains eligible for benefits.[6] 42 U.S.C. § 1382c(a)(3)(H)(ii)(I). This process is referred to as a "continuing disability review." 20 C.F.R. § 416.989.

When performing the continuing disability review, the Commissioner utilizes a three-step medical improvement review standard to ascertain whether the child's disabling condition improved since the most recent favorable decision. *See* 20 C.F.R. § 416.994a(a); *Baker ex rel. Baker*, 410 F. Supp. 2d at 761; Social Security Ruling ("SSR") 05-03p, 2005 SSR LEXIS 4, 70 Fed. Reg. 21,833, 21,833 (Apr. 27, 2005). "The most recent favorable decision is the latest final determination or decision involving a consideration of the medical evidence and whether [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c)(1). This is referred to as the "comparison point decision" ("CPD"). SSR 05-03p, 2005 SSR LEXIS 4, 70 Fed. Reg. at 21,834.

First, the Commissioner must determine whether the child-claimant experienced medical improvement[7] in his disabling impairment since the CPD. 20 C.F.R. § 416.994a(a)(1), (b)(1). If there has been no medical improvement, the child-claimant continues to be disabled, unless an exception applies. *Id.* Second, the ALJ must determine whether the child's impairments at the time

---

[6] The Act provides that "[n]ot less frequently than once every 3 years, the Commissioner shall review . . . the continued eligibility for benefits . . . of each individual who has not attained 18 years of age and is eligible for such benefits by reason of an impairment (or combination of impairments) which is likely to improve." 42 U.S.C. § 1382c(a)(3)(H)(ii)(I).

[7] "Medical improvement is any decrease in the medical severity of [the child-claimant's] impairment(s) which was present at the time of the most recent favorable decision that [the child claimant was] disabled or continued to be disabled." 20 C.F.R. § 416.994a(c).

6

of the CPD now meet or medially equal the same listing that it met or medically equaled at the time of the CPD. *Id.* § 416.994a(a)(1), (b)(2); SSR 05-03p. If so, the child-claimant continues to be disabled, unless an exception applies. 20 C.F.R. § 416.994a(a)(1), (b)(2). Third, if the child's impairment no longer meets or medically equals the same Listing that it met or equaled at the time of the CPD, and does not functionally equal the Listings, the Commissioner must determine whether the child-claimant is currently disabled under the three-step sequential analysis in 20 C.F.R. § 416.924 for determining whether a child is disabled in the first instance. *Id.* § 416.994a(a)(1), (b)(3). If not, the child-claimant ceases to be disabled, and benefits are terminated. *Id.*

For purposes of steps one and two of the analysis, there are two groups of exceptions that, if applicable, may terminate benefits even absent medical improvement. The Commissioner will find that a Group 1 exception applies if: (1) "[s]ubstantial evidence shows that, based on new or improved diagnostic techniques or evaluations, [the claimant's] impairment(s) is not as disabling as it was considered to be at the time of the most recent favorable decision," *id.* § 416.994a(e)(1); or (2) "[s]ubstantial evidence demonstrates that any prior disability decision was in error," *id*. § 416.994a(e)(2). If a Group 1 exception applies, the Commissioner will assess whether the claimant is currently disabled, considering all impairments. *Id.* § 416.994a(e). The Commissioner will find that a Group 2 exception applies if: (1) "[a] prior determination or decision was fraudulently obtained," *id.* § 416.994a(f)(1); (2) the claimant, without good cause, fails to cooperate with the [SSA], *id.* § 416.994a(f)(2); (3) the [SSA] is unable to find the claimant, *id.* § 416.994a(f)(3); or (4) the claimant "fail[s] to follow prescribed treatment which would be expected to improve [the claimant's] impairment(s) so that it no longer results in marked and severe functional limitations,"

*id.* § 416.994a(f)(4). If a Group 2 exception applies, the claimant's benefits are terminated without further inquiry into whether the claimant is currently disabled. *Id.* § 416.994a(f).

### III. THE ALJ'S DECISION

The ALJ followed the three-step medical improvement review process established by the Act in analyzing J.M.B.'s disability claim. (R. at 15-32.) At step one, the ALJ noted that J.M.B.'s CPD was May 16, 2007. (R. at 18.) At step two, the ALJ determined J.M.B.'s communication disorder medically equaled Listing 2.09 (loss of speech) at the time of the CPD. (R. at 19.) According to the ALJ, "the medical evidence supports a finding that, as of December 3, 2015, there had been a decrease in medical severity of the impairments present at the time of the CPD." (R. at 19.) The ALJ concluded that, since December 3, 2015, J.M.B.'s impairment at the time of the CPD did not meet or medically equal section 102.00 as that listing was written on May 16, 2007. (R. at 19.) Moreover, since December 3, 2015, "the impairment that the claimant had at the time of the CPD has not functionally equaled the Listings of Impairments (20 CFR 416.994a(b)(2) and 419.926a and SSR 05-03p)." (R. at 19.)

At step three, the ALJ determined that, since December 3, 2015, J.M.B. "has had the following severe impairments: communication disorder; autism spectrum disorder; and mild intellectual disability (20 CFR 416.924(c))." (R. at 25.) The ALJ then explained why he concluded that J.M.B. did not have an impairment or combination of impairments that met or medically equaled any listed impairment. (R. at 26.) In doing so, he summarized his analysis of Listings 112.05, 112.10, and 102.00. (R. at 26-27.) With regards to Listing 112.05 (intellectual disorder), the ALJ explained:

> [J.M.B.] was able to complete a WISC-V, which negates the inability to participate in standardized testing required for listing 112.05A. His WISC-V FSIQ of 62 was also noted as under his potential, with some interference during testing. However, the

8

> undersigned finds [J.M.B.] has a marked limitation in understanding, remembering, and applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, and maintain pace, and a mild limitation in adapting or managing himself. As such the undersigned finds [J.M.B.] does not meet or medically equal the requirements of listing 112.05.

(R. at 26.) (Internal citations omitted.)

Because J.M.B.'s impairments did not meet, medically equal, or functionally equal any listed impairments, and J.M.B's impairments did not result in either a marked limitation in two domains of functioning, or one extreme limitation in one domain of functioning, the ALJ concluded that Plaintiff's disability ended on December 3, 2015, and he had not become disabled again since that date. (R. at 32.)

## IV. ANALYSIS

Plaintiff alleges that the ALJ's finding that J.M.B. ceased to be disabled as of December 3, 2015, is not supported by substantial evidence. (Pl.'s Mem. at 1.) Plaintiff argues that J.M.B. continues to be disabled because J.M.B.: (1) is easily distracted; (2) needs to be redirected to stay on task; and (3) has low testing scores and grades. (Pl.'s Mem. at 1-7.) Plaintiff contends the ALJ erred by not concluding that J.M.B. was markedly limited in the domain "Attending and Completing Tasks," and that, had the ALJ properly accounted for J.M.B.'s impairment and assessed him with a marked limitation in this domain, J.M.B.'s impairment would have met or medically equaled the criteria under Listing 112.05. (Pl.'s Mem. at 1.) For the reasons set forth below, the Court finds that the ALJ's determination that J.M.B.'s disability ceased as of December 3, 2015 is supported by substantial evidence.

9

### A. The ALJ Did Not Err When He Concluded J.M.B.'s Impairment Did Not Meet or Medically Equal Listing 112.05

#### 1. *Legal Standard.*

In determining whether a child's impairment meets one of the listed impairments, the Commissioner compares the symptoms, signs, and laboratory findings of an impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "If a severe impairment is of the degree set forth in a Listing, and such impairment meets the twelve-month durational requirement, . . . then [the child] 'is conclusively presumed to be disabled and entitled to benefits.'" *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (internal quotation and citation omitted). "For a [child] to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). It is not enough to have the diagnosis of a listed impairment; the child "must have a medically determinable impairment(s) that satisfies all of the criteria of the listing." 20 C.F.R. § 416.925(d); *see Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 96 L. Ed. 2d 119 & n.5 (1987) (noting it is the claimant's burden to show a medically determinable impairments and to furnish medical evidence regarding the condition).

In evaluating whether a child's impairments are functionally equivalent to the Listings, the ALJ must consider the "whole child" and determine what he cannot do, has difficulty doing, or is restricted from doing because of his impairments. 20 C.F.R. § 416.926a(a); SSR 09-1p, 2009 SSR LEXIS 1. He must consider all relevant information in the case record, which includes medical evidence, test scores, and information from parents, caregivers, teachers, and school personnel. 20 C.F.R. § 416.924a(a). He should then compare the child's functioning to that of other children his age who do not have impairments. 20 C.F.R. § 416.924a(b)(3); SSR 09-1p, 2009 SSR LEXIS 1.

The ALJ must assess the interactive and cumulative effects of the child's severe and nonsevere impairments. 20 C.F.R. §§ 416.924a(b)(4), 416.926a(a). He must also consider the child's abilities to "initiate, sustain, and complete" activities, "the amount of help or adaptations" the child needs, and "the effects of structured or supportive settings." 20 C.F.R. § 416.924a(b)(5); SSR 09-1p, 2009 SSR LEXIS 1.

The regulations require an ALJ to find that a child has "marked" limitation in a domain when his impairment or combination of impairments interferes seriously with his ability to independently initiate, sustain, or complete activities. *See* 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation also means a limitation is "more than moderate" but "less than extreme," and may arise when several activities or functions are limited, or when only one is limited. *Id.* An ALJ should find that a child has an "extreme" limitation in a domain when his impairment or combination of impairments interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation also means a limitation is "more than marked," and may arise when one or more activities or functions are limited. *See id.*

    2. *Listing 112.05.*

Plaintiff argues that the medical and educational records support a finding that J.M.B.'s impairments met Listing 112.05. Listing 112.05 addresses intellectual disability. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 112.05. To meet the Listing, J.M.B.'s impairments must satisfy the requirements in either part A or B. *Id.* For 112.05B, J.M.B. must have "[s]ignificantly subaverage general intellectual functioning" and "[s]ignificant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of

11

mental functioning:" (1) understanding, remembering, or applying information;[8] (2) interacting with others;[9] (3) concentrating, persisting, or maintaining pace;[10] and (4) adapting or managing oneself.[11] *Id.* § 112.05B (2)(a)-(d).

### 3. The ALJ's Evaluation of J.M.B.'s Impairment Under Listing 112.05.

In finding that there was medical improvement in J.M.B.'s condition as of December 3, 2015, the ALJ considered J.M.B.'s intelligence test scores, grades and medical records, and the opinions of several consultative examiners and state agency medical consultants. First, the ALJ

---

[8] According to § 112.05(E)(1): "This area of mental functioning refers to the abilities to learn, recall, and use information to perform age-appropriate activities. Examples include: understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing an activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgment to make decisions."

[9] According to § 112.05(E)(2): "This area of mental functioning refers to the abilities to relate to others age-appropriately at home, at school, and in the community. Examples include: engaging in interactive play; cooperating with others; asking for help when needed; initiating and maintaining friendships; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness."

[10] According to § 112.05(E)(3): This area of mental functioning refers to the abilities to focus attention on activities and stay on task age-appropriately. Examples include: initiating and performing an activity that you understand and know how to do; engaging in an activity at home or in school at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while engaged in an activity or task; changing activities without being disruptive; engaging in an activity or task close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at school; and engaging in activities at home, school, or in the community without needing an unusual amount of rest.

[11] According to § 112.05(E)(4): This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in age-appropriate activities and settings. Examples include: responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable performance in community- or school-related activities; setting goals; making plans independently of others; maintaining personal hygiene; and protecting yourself from harm and exploitation by others.

12

acknowledged that an intelligence test conducted by Franklin Russell, Ph.D. ("Dr. Russell") on September 13, 2015, yielded a full-scale IQ score of 62. (R. at 26, citing R. at 574.) However, the ALJ questioned whether the IQ score was a valid indicator of J.M.B.'s actual potential due to "some interference during questioning." (R. at 26, citing R. at 574.) This "interference" presumably referred to Dr. Russell's notes in the IQ testing record about how Plaintiff "asked to stand close to the table so she could see what the examiner was doing" and, "[d]espite the examiners request for her not to give assistance, she did prod on occasion and restate his instructions about the objectives of some of the tasks." (R. at 574.) Nonetheless, Dr. Russell noted that J.M.B. "likely has the intellectual potential to achieve at a higher level than what is suggested by a Full Scale IQ score of 62." (R. at 574.) As Defendant correctly points out, it was not error for the ALJ to question the validity of the IQ score when "there is evidence in the record to suggest otherwise." (Def.'s Mem. at 11, citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 112.00H.) As noted by the ALJ, Dr. Russell indicated that he had doubts about whether J.M.B.'s IQ score was a true indicator of his general intellectual functioning. (R. at 26.)

Nevertheless, even if the ALJ considered J.M.B.'s IQ score to be a valid indicator of his intellectual functioning for the purposes of Listing 112.05B, the ALJ thoroughly explained that J.M.B. did not possess an extreme limitation in one, or marked limitation in any two of the four areas of mental functioning required by part two of Listing 112.05B. (R. at 26.) Plaintiff considers it to be error for the ALJ to have determined that J.M.B. had a marked limitation only in understanding, remembering, and applying information, and contends that J.M.B. had a "worse than 'moderate'" limitation in concentration, persistence, and pace. (Pl.'s Mem. at 4-5.)

The ALJ explained his findings in this domain as follows:

13

> As to concentrating, persisting, and maintaining pace, educators reported [J.M.B.] completes his assignments, is hardworking, and is easily brought back on task if his attention wanders. The consultative examinations revealed a good attention and concentration. [J.M.B.] can fix meals, play video games, and watch TV. As such, the undersigned finds [J.M.B.] has a mild limitation in concentrating, persisting, and maintaining pace.

(R. at 27) (internal citations omitted.)

In a consultative examination on March 16, 2017, Linda Scott, Ph.D. ("Dr. Scott") determined, based on "Teacher Questionnaire data," that J.M.B. had "no problems" in the area of attention and concentration for task completion. (R. at 618.) She found J.M.B. "was able to focus and concentrate fairly well during the mental status examination. Teacher Questionnaire data indicates he has some difficulties acquiring and using information." (R. at 618.) J.M.B.'s recent and remote memory was "fair," although he acknowledged that he "forgets things sometimes." (R at 615, 617.) J.M.B. also reported having "significant difficulty concentrating when people are too loud and he can't think," and "has difficulty focusing on a few things at once." (R. at 615.) J.M.B. told Dr. Scott that he was capable of "help[ing] with household chores such as 'picking up bottles on the floor,'" doing yard work, stacking wood, feeding the dog, playing with his friend, riding his four-wheeler, and bathing himself with Plaintiff's assistance. (R. at 616.) Plaintiff reported that J.M.B. must be reminded to brush his teeth and to bathe himself properly, noting that he "doesn't do a good job of it." (R. at 616.) During her examination, Dr. Scott asked J.M.B. to complete a series of tasks to gauge his thought processes, speech, intellect, attention, and concentration. (R. at 617.) Dr. Scott noted that his "[a]ttention and concentration was fairly good as measured by these brief concentration tasks." (R. at 617.)

In addition to Dr. Scott's and Dr. Russell's consultative examinations, the ALJ considered J.M.B.'s educational records and reports from teachers. (R. at 28.) He noted that J.M.B. has had

an individualized education plan ("IEP") from 2015 through 2021, "with reports of A's, B's, C's, D's, and at least one F." (R. at 28, citing R. at 383, 518, 525-34, 542-52, 651-80.) He summarized these records, explaining:

> Educators reported he gets along with peers and adults, is hardworking, is easily brought back to task if his attention wanders, and is able to ask for his wants and needs but does not always comprehend what he is reading and has trouble transferring his thoughts to writing. His IEP reported he needed his work checked for understanding, required clarification and repetition of direction, and needed a structured environment with minimal distractions . . . . [J.M.B.] required directions to be explained and repeated, a copy a [sic] notes, information to be read aloud, and work to be checked frequently for understanding. Educators were to grade him on what he could do but not on grade level; however, they reported he was still capable of a standard diploma. His speech therapist reported an increased understanding of idioms and social inferences, with a suggestion to decrease speech therapy once a month.

(R. at 28) (internal citations omitted.)

The ALJ also noted that J.M.B.'s teacher in 2015 reported "up to a slight problem in attending and completing tasks" and that his behavior was "generally excellent." (R. at 28, citing R. at 303-04.) In 2016, his special education case manager reported "no problem in attending and completing tasks," and "no problem in caring for himself." (R. at 28, citing R. at 420.)

Further, the ALJ explained the medical opinion evidence and how it supported his determination that J.M.B. had a mild limitation in concentrating, persisting, and maintaining pace. (R. at 29-30.) The ALJ noted that state agency medical consultants (Joseph Duckwall, M.D. and Patricia Bruner, Ph.D.) opined that J.M.B. had "a less than marked limitation in attending and completing tasks," which the ALJ found persuasive because it was "consistent with the [J.M.B.'s] ability to take care of his dogs, clean his room, fix meals, play video games, watch TV, spend time with friends, and have continued success in speech therapy." (R. at 30.) The ALJ added that they were consistent with some of the other medical opinion evidence, but also "consistent with the

educator and examination reports that he . . . has good attention and concentration." (R. at 30.) The ALJ concluded that since December 3, 2015, J.M.B. "has had less than marked limitation in attending and completing tasks." In support of this conclusion, the ALJ explained:

> [J.M.B.'s] IEPs reported he needs redirection and repetition of instructions; however, educators also reported [J.M.B.] completes his assignments, is hardworking, and is easily brought back on task if his attention wanders. His teacher and case manager reported slight to no problems in this domain. Consultative examinations revealed a good attention and concentration. [J.M.B.] can fix meals, play video games, and watch TV. As such, the undersigned finds [J.M.B.] has a less than marked limitation in this domain.

(R. at 31) (internal citations omitted.)

A review of the record in this case supports the ALJ's finding that J.M.B. "has had less than marked limitation in attending and completing tasks." (R. at 31.) In making his decision, the ALJ sufficiently articulated his findings based on the medical opinion evidence, J.M.B.'s educational records, and J.M.B.'s reported activities. As a result, it was not error for the ALJ to conclude that J.M.B. did not have an intellectual disorder of the nature or severity contemplated by Listing 112.05. Therefore, substantial evidence supports the ALJ's conclusion that J.M.B. became medically improved as of December 3, 2015, and that he had not become disabled since then.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 13) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge M. Hannah Lauck.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.

/s/ MRC
Mark R. Colombell
United States Magistrate Judge

Richmond, Virginia
Date: <u>July 18, 2022</u>